**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
GILBERTO RIOS,                                                          Case No.:

                                        Plaintiff,          **COMPLAINT**

               -against-

                                                             **PLAINTIFF DEMANDS**
CORE FACILITY SERVICES LLC, MERIDIAN             **A TRIAL BY JURY**
MANAGEMENT CORPORATION, and GREG
BASSINANI, *Individually*,
                                        Defendants.
--------------------------------------------------------------------X

Plaintiff, GILBERTO RIOS, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, upon information and belief, complains as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendants pursuant to the <u>Family and Medical Leave

   Act</u>, 29 U.S.C. § 2601, *et seq*. ("FMLA"), the <u>Americans with Disabilities Act of 1990</u>, 42

   U.S.C. § 12101, *et seq*. ("ADA"), and the New York City Administrative Code § 8-107, *et.*

   *seq.*, and seeks damages to redress the injuries Plaintiff has suffered as a result of being

   **<u>discriminated against</u>** and **<u>terminated</u>** by his employer due to his **<u>disability (obstructive</u>**

   **<u>coronary artery disease), perceived disability</u>** and **<u>exercising his rights under the</u>**

   **<u>FMLA.</u>**

## JURISDICTION

2. Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et. seq.*, 29 U.S.C. § 2617, and

   28 U.S.C. §§ 1331 and 1343.

3. In addition, this Court has supplemental jurisdiction over Plaintiff's city law claims pursuant

to 28 U.S.C. §1367 as such claims are derived from the same case or controversy and share a common nucleus of operative fact.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this Complaint occurred within the county of Queens, the Eastern District of the State of New York.

### PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated 3/18/2016, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

### PARTIES

8. At all times relevant hereto, Plaintiff GILBERTO RIOS ("RIOS") was and is a resident of the State of New York and County of Queens.

9. At all times relevant hereto, Defendant CORE FACILITY SERVICES LLC ("CORE") is a foreign limited liability company duly existing pursuant to, and by virtue of, the laws of the State of Delaware, with a principal office located at 1120 Avenue of the Americas, New York NY 10036. Defendant CORE operates at Building 209, JFK International. Jamaica, NY 11430.

10. At all times relevant hereto, upon information and belief, Defendant CORE employed 50 or more employees.

11. At all times relevant hereto, Defendant MERIDIAN MANAGEMENT CORPORATION

("MERIDIAN") was and is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of Florida, with a principal executive office located at 818 AIA North, Suite 300, Ponte Vedra Beach, Florida 32082.

12. At all times relevant hereto, upon information and belief, Defendant MERIDIAN employed 50 or more employees.

13. That at all times relevant hereto, Plaintiff RIOS was an employee of Defendants MERIDIAN and CORE.

14. That at all times relevant hereto, upon information and belief, Defendant GREG BASSINANI ("BASSINANI") was and is a resident of the State of New York.

15. That at all times relevant hereto, Defendant BASSINANI was and is the Vice President of Defendant CORE's Facility Services.

16. That at all times relevant hereto, Defendant BASSINANI was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant BASSINANI had the authority to hire, terminate and affect the terms and conditions of Plaintiff's employment.

17. At all times relevant hereto, Defendant CORE, Defendant MERIDIAN, and Defendant BASSINANI are collectively referred to herein as "Defendants."

## **MATERIAL FACTS**

18. The Port Authority of New York and New Jersey ("Port Authority") routinely contracts out maintenance services for the terminals at John F. Kennedy International Airport ("JFK"). When a new company assumes management control at JFK, it is standard practice for the company to retain the existing employees on site. In advance of the new company assuming control, the employees fill out paperwork for the new company, apply for an updated Port Authority identification card, and are sized for new uniforms.

19. On or around June 2004, Plaintiff started work as a "Maintenance Mechanic" at JFK. At the time, Building Service International of N.Y., Inc. oversaw operations at JFK.

20. Within approximately eleven years at JFK, management changed hands on three occasions. Each time, Plaintiff, as well as the other existing employees, were automatically hired by the new management company.

21. In fact, under the terms of Port Authority's bidding requirement form, no personnel changes, moves or modifications to the employee list was allowed without express written approval from Port Authority.

22. In June 2004, Defendant MERIDIAN assumed control of maintenance at JFK. Plaintiff was earning approximately $31.13 per hour for approximately 40 hours per week in Operations and Maintenance for Unoccupied building owned by Port Authority.

23. In or around April 2015, Plaintiff learned that Defendant CORE had won the bid to provide maintenance services for JFK. At that time, Plaintiff completed the fingerprinting and necessary paperwork to complete the transition from Defendant MERIDIAN to Defendant CORE, including paperwork to continue his health insurance. Plaintiff also passed a safety test and received a certificate from Defendant CORE. As a result, Defendant CORE hired Plaintiff and ordered Plaintiff a new uniform.

24. On or around April 30, 2015, Plaintiff went to North Shore LIJ for an angioplasty procedure. During the procedure, Plaintiff's cardiologist diagnosed him with Obstructive Coronary Artery Disease, and determined that Plaintiff needed emergency triple bypass surgery.

25. Plaintiff immediately informed Charlie Gugan, (Plaintiff's manager), Bobby Jean (Plaintiff' supervisor), and Jack Carrigan (shop steward) of his health condition.

26. Upon information and belief, all three individuals were retained by Defendant CORE when

it assumed control from Defendant MERIDIAN.

27. Plaintiff received management approval from Defendant CORE and MERIDIEN to use **vacation and sick days** in order to recuperate from the surgery.

28. Plaintiff provided sufficient information about the seriousness of his health condition for Defendants to have reasonably determined that FMLA should have applied to his leave request.

29. However, Defendants failed to acknowledge Plaintiff's FMLA rights by ignoring his eligibility for this leave.

30. Instead, Defendants provided Plaintiff with a "Notice and Proof of Claim for Disability Benefits" to return to them.

31. From April 30 to May 15, 2015, Plaintiff was hospitalized.

32. On or about May 2, 2015, Plaintiff's wife was admitted to North Shore LIJ, and a lung biopsy was required to diagnose her with Churg Strauss Syndrome. Plaintiff's wife was hospitalized for approximately ten days.

33. While both Plaintiff and his wife were hospitalized, Plaintiff received health insurance cards from United Health Care, the insurance company for Defendant CORE's employees. The insurance card for Plaintiff's wife was misspelled, so he called the insurance company to correct the error. The insurance company sent a new card immediately.

34. Despite using the insurance cards without issue through their hospitalizations, on or around June 22, 2015, Plaintiff's wife attempted to refill her medication at the pharmacy, only to learn that she was no longer insured.

35. Immediately, Plaintiff's wife called Defendant CORE to remedy the issue. Defendant CORE informed Plaintiff's wife that he no longer had a job.

36. Under Article XI of the Collective Bargaining Agreement ("CBA") between Defendant CORE and Transport Workers Union of America AFL/CIO, Local 504, employees laid off through no fault of their own must be granted two (2) weeks notice in writing.

37. Plaintiff never received notice of his termination from Defendant CORE.

38. Horrified, Plaintiff went to the union hall for assistance. The union refused to aid him and did not explain the situation, even when Plaintiff informed them of Defendant CORE's discriminatory behavior.

39. In or around July 2015, Plaintiff turned over to Defendants the "Notice and Proof of Claim for Disability Benefits" form that stated he could return to work on August 3, 2015. Plaintiff handed this form to the Superintendant John Ciosalo. The secretary, Stephanie, made a copy and instructed Plaintiff to call Defendant BASSINANI, but Plaintiff could not reach him. In this meeting, Plaintiff's Chief Supervisor, Jimmy Gavin, asked Plaintiff when he would be returning to work.

40. On or around July 31, 2015, Plaintiff submitted an additional letter from his surgeon, clearing him to return to work on August 3, 2015. Defendant CORE, however, rejected the letter, reiterating that Plaintiff no longer had a position with them.

41. Plaintiff immediately called Defendant BASSINANI, but Defendant BASSINANI rudely claimed that he could not understand Plaintiff because of his accent. Defendant BASSINANI passed the phone to a Spanish-speaking employee, who ordered Plaintiff to pick up his belongings from the worksite.

42. Defendant BASSINANI's conduct was clearly intended to humiliate and offend Plaintiff as the two had previously spoken on multiple occasions without the involvement of a translator.

43. On or around August 1, 2015, a coworker informed Plaintiff that Defendant CORE taped

Plaintiff's lockers, and posted memoranda ordering employees to inform Defendant BASSINANI if Plaintiff was spotted on the premises.

44. Defendant CORE went out of its way to treat Plaintiff like a criminal after blatantly discriminating against him due to his disability and/or perceived disability

45. On or around August 3, 2015, Plaintiff went with a police escort to the Port Authority Station Building 269 to retrieve his belongings with the hope of avoiding any trouble. While on site, a coworker called the union, and a representative was sent over. Plaintiff asked the representative for a letter explaining the reason for Plaintiff's dismissal. No letter was provided.

46. Upon information and belief, Plaintiff continued to be listed on the work schedules purportedly approved by Defendant CORE at least until August 5, 2015.

47. Plaintiff was eligible for FMLA leave as he worked for Defendant MERIDIAN at JFK for at least 12 months, and worked for at least 1,250 hours over the 12 months immediately prior to the leave.

48. Defendant CORE was a successor in interest to Defendant MERIDIAN and was an eligible employee under FMLA as to both employers.

49. Plaintiff suffered from a serious health condition (Obstructive Coronary Artery Disease) that made him eligible for FMLA leave.

50. In the alternative, Plaintiff's heart condition is an impairment that substantially limits one or more of his major life activities within the meaning of §12102(1)(A) of the ADA.

51. Plaintiff is a qualified individual who can perform the essential functions of his employment with a reasonable accommodation (medical leave) as defined by §12111(8) of the ADA.

52. **But for Plaintiff's Obstructive Coronary Artery Disease, Defendants would not have**

**discriminated against him in the terms and conditions of his employment.**

53. **Defendants intentionally violated Plaintiff's FMLA rights by terminating him.**

54. Plaintiff feels offended, disturbed, and humiliated by the blatantly unlawful, discriminatory, and retaliatory termination.

55. **Defendant's actions and conduct were intentional and intended to harm Plaintiff.**

56. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. As a result of Defendant's discriminatory treatment of Plaintiff, he has suffered severe emotional distress and physical ailments.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a salary, overtime payments, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses.

59. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

60. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**FOR VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

61. Section 2612 of the Family Medical Leave Act, states in pertinent part: "Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

62. Defendants violated Plaintiff's FMLA rights by failing to provide him with appropriate leave thereunder.

## AS A SECOND CAUSE OF ACTION
## FOR INTERFERENCE AND RETALIATION UNDER
## THE FAMILY AND MEDICAL LEAVE ACT

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

64. Section 2612(D) of the Family Medical Leave Act, states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

65. Section 2615(a) of the Family Medical Leave Act, states in pertinent part: "Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in

any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

66. Defendant discriminated against Plaintiff in retaliation for denying his rights under the FMLA.

67. As such, Plaintiff has been damaged as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

68. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

69. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

70. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

71. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability.

72. As such, Plaintiff has been damaged as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER CITY LAW

73. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

74.     Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

75.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff solely due to his disability.

**AS A FOURTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

63. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64.     New York City Human Rights Law, Administrative Code § 8-107 [1] provides that

>       It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

65.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his actual and/or perceived disability.

66.     As such Plaintiff has been damaged as set forth herein.

## AS A FIFTH CAUSE OF ACTION OF DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

67.     Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68.     New York City Human Rights Law, Administrative Code §8-107(6) provides that: "Aiding and abetting. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

69.     Defendants violated the section cited herein as set forth.

70.     As such Plaintiff has been damaged as set forth herein.

## AS A SIXTH CAUSE OF ACTION OF DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

71.     Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72.     New York City Human Rights Law, Administrative Code §8-107(19) provides that:

> "Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

73.     Defendants violated the section cited herein as set forth.

74.     As such Plaintiff has been damaged as set forth herein.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

75.     Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76.     New York City Human Rights Law, Administrative Code §8-107(13) provides that:

"Employer liability for discriminatory conduct by employee, agent or independent contractor.

> a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

> b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only whilst:

> (1) the employee or agent exercised managerial or supervisory responsibility; or

> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct whilst that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> (3) the employer should have known of the employee's or agent's

discriminatory conduct and failed to exercise reasonable diligence to prevent

such discriminatory conduct."

77.    Defendants violated the section cited herein as set forth.

78.    As such Plaintiff has been damaged as set forth herein.

## JURY DEMAND

82.    Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the New York City Administrative Code § 8-107, *et. seq.*, in that Defendants discriminated against Plaintiff on the basis of his disability and/or perceived disability;

B.    Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York

April 7, 2016

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

Marjorie Mesidor
Brittany A. Stevens
*Attorneys for Plaintiffs*
45 Broadway, Suite 620
New York, NY 10006
212-248-7431
MMesidor@tpglaws.com
BStevens@tpglaws.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Gilberto Rios<br>135-21 129th Street<br>South Ozone Park, NY 11420 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-00149 | Sarina L. Shaver,<br>Investigator | (212) 336-3776 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin J. Berry*       3/18/16

Enclosures(s)

Kevin J. Berry,
District Director

(Date Mailed)

cc:
Director
Director of Human Resources
CORE FACILITY SERVICES LLC
150 E 42nd Street
RM 1701
New York, NY 10017

Marjorie Mesidor, Esq.
45 BROADWAY
Suite 620
New York, NY 10006